[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14080
Non-Argument Calendar

_____

D. C. Docket No. 99-00074-CR-004

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN MUZA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(May 29, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Juan Muza, proceeding pro se, appeals the district court's denial of his 18 U.S.C. § 3582(c)(2) motion for a sentence reduction. The district court did not abuse its discretion in denying Muza's motion, because it properly found that Guidelines Amendment 657, which applies exclusively to oxycodone, was inapplicable because Muza's case involved a different drug, hydromorphone, which is known by the trade name Dilaudid. In addition, the district court did not have jurisdiction to consider Amendments 484 and 517, because they were not "subsequent" amendments within the meaning of § 3582(c)(2). Accordingly, we AFFIRM.

## I. BACKGROUND

A grand jury indicted Muza and four others for: (1) conspiracy to possess with intent to distribute more than 4,488 tablets of Dilaudid, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) possession with intent to distribute Dilaudid, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) traveling in interstate commerce with the intent to possess with intent to distribute Dilaudid, in violation of 18 U.S.C. § 1952(a).

In a jury trial, Muza was found guilty on all three counts. In the presentence investigation report ("PSI"), the probation officer calculated a base offense level of

34, pursuant to U.S.S.G. § 2D1.1(c)(3). According to the PSI, Muza was involved with approximately 27,000 Dilaudid tablets. Each Dilaudid tablet weighed 90 milligrams and contained the controlled substance hydromorphone. Based on the drug equivalency tables found in § 2D1.1, each gram of hydromorphone was equivalent to 2.5 kilograms of marijuana and, therefore, Muza was involved with the equivalent of 6,075 kilograms of marijuana.

At the sentencing hearing, the district court found that the number of Dilaudid tablets involved exceeded 14,000, which, based on a per tablet weight of 90 milligrams, was equivalent to 3,150 kilograms of marijuana. The district court determined, therefore, that Muza had a base offense level of 34. U.S.S.G. § 2D1.1(c)(3). The district court sentenced Muza to a term of 292 months of imprisonment. We affirmed Muza's convictions and sentence and found no clear error in the district court's determination of drug quantity.

Thereafter, Muza filed a motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2). Muza argued that Amendments 657, 484, and 517 of the Sentencing Guidelines applied retroactively to his case and asserted the principal that drug tablets come in variable dosages, and that only the portion of the tablet that contains the controlled substance in question should be used to determine the drug quantity to be used for sentencing purposes. He argued that the Dilaudid

3

tablets involved in this case contained only 4 milligrams of hydromorphone, not the full tablet weight of 90 milligrams that Muza had been held accountable for at his sentencing. Based on the drug equivalency tables, 4 milligrams of hydromorphone was equivalent to 350 kilograms of marijuana and, therefore, he contended, he should have had a base offense level of 26, not 34 as was originally calculated. After applying the applicable enhancements to an offense level of 26, Muza would have only been subject to a Guidelines range of 121 to 151 months. Therefore, Muza asserted that Amendments 657, 484, and 517 required the district court to reduce his sentence, pursuant to § 3582(c)(2), and that the failure to do so would constitute an Equal Protection violation. In the alternative, Muza argued that he was entitled to the rule of lenity because the amendments were ambiguous as to whether the Guidelines calculation relied on the weight of the tablet or the actual weight of the controlled substance within the tablet.

The district court denied Muza's motion to reduce his sentence. The district court found that Amendment 657, which altered the drug equivalency tables for oxycodone, did not apply in this case because Muza was sentenced for offenses involving hydromorphone (Dilaudid). Further, the court found that Amendment 657 was not ambiguous because it explicitly and repeatedly limits its reach to oxycodone, and, therefore, the court rejected Muza's rule of lenity argument. The

4

court also found that although Amendments 657, 484, and 517 arguably reflected a trend towards how the weight of drugs in tablet form should be measured, the amendments did not apply to the drug hydromorphone, and the court could not reduce Muza's sentence based solely on the possibility of future amendments.

The district court declined to grant Muza leave to proceed in forma pauperis ("IFP") on appeal because Muza's § 3582(c)(2) motion lacked merit. We also denied Muza leave to proceed IFP, finding that Muza's argument on appeal was frivolous, as Muza had failed to state a claim upon which relief could be granted because Amendment 657 explicitly applies exclusively to oxycodone.

## II. DISCUSSION

Muza argues on appeal that the district court erred in denying his motion to reduce his sentence because Amendments 657, 484, and 517 demonstrate that only the actual weight of the controlled substance should be used for purposes of sentencing. Both oxycodone and hydromorphone are listed in the guidelines as Schedule I or II opiates and, therefore, he contends, it is an Equal Protection violation to treat the two drugs differently. He also argues that the buffer portion of the tablets should be excluded from the total weight. The "crux" of Amendment 657 is that drugs in tablet form, such as hydromorphone (Dilaudid), come in variable dosages. He argues that the Dilaudid tablets involved in the instant

5

offense contained only 4 milligrams of hydromorphone, not 90 milligrams for which he was held accountable. Based on 14,000 tablets and a per-tablet weight of 4 milligrams, Muza argues that he should have had a base offense level of only 26. Applying the applicable enhancements to this base offense level, Muza's Guidelines range would be 121 to 151 months and, therefore, he contends, the sentence actually imposed is substantially prejudicial. He asserts that the district court had the authority and jurisdiction under § 3582(c)(2) to reduce Muza's sentence in response to the amendments. Alternatively, Muza invokes the rule of lenity because of the ambiguity within the amendments concerning the lack of distinction between hydromorphone and oxycodone.

In his reply brief, Muza also argues for the first time that the district court committed a Booker[1] error because it sentenced him under a mandatory guidelines scheme. Because of this Booker error, he argues, the court never considered his rule of lenity and Equal Protection arguments. In addition, Muza reasserts his Equal Protection claim that hydromorphone (Dilaudid), which is a Schedule I or II opiate like oxycodone, should be treated the same way as oxycodone and, therefore, the amendments should be applied to his sentence.

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

6

As a preliminary matter, because Muza raises his <u>Booker</u> argument for the first time in his reply brief, that argument is not properly before us. <u>See</u> <u>United States v. Evans</u>, 473 F.3d 1115, 1120 (11th Cir. 2006).

A district court's decision whether to reduce a sentence pursuant to 18 U.S.C. § 3582(c)(2) is reviewed for an abuse of discretion. <u>United States v. White</u>, 305 F.3d 1264, 1267 (11th Cir. 2002) (<u>per</u> <u>curiam</u>) (citation omitted). Section 3582(c)(2) "does not grant to the court jurisdiction to consider extraneous resentencing issues." <u>United States v. Bravo</u>, 203 F.3d 778, 782 (11th Cir. 2000). Instead, § 3582(c)(2) permits a district court to modify an imposed term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2).

Amendment 657, which became effective in November 2003, modified the way in which the drug oxycodone is measured for federal sentencing purposes. <u>See</u> U.S.S.G. App. C, Vol. II, Amend. 657. As a result of the amendment, the actual weight of the oxycodone contained within the tablet should be used for sentencing purposes. The reason for the amendment was to address "proportionality issues in the sentencing of oxycodone trafficking offenses." <u>See</u>

7

id., Reason for Amend. Varying amounts of oxycodone are found in prescription pain relievers that are generally sold in tablet form. The proportionality issues arose because different medications contain different formulations and different amounts of oxycodone may exist in tablets of the same weight.

Here, the district court did not abuse its discretion in denying Muza's motion for a modification of his sentence, pursuant to Amendment 657, because that amendment has no application to this case. Muza does not dispute that the drug involved in this case was hydromorphone (Dilaudid). Amendment 657 is inapplicable, because the amendment applies exclusively and explicitly to oxycodone. See U.S.S.G. App. C, Vol. II, Amend. 657. Moreover, the district court correctly determined that Amendment 657 was unambiguous and, therefore, Muza was not entitled to the rule of lenity. See United States v. Jeter, 329 F.3d 1229, 1230 (11th Cir. 2003) (per curiam) (holding that the rule of lenity applies to the Sentencing Guidelines where there is ambiguity).

As to Muza's arguments based upon Amendments 484 and 517, because Muza was sentenced in 2000, Amendment 484, which became effective in November 1993, and Amendment 517, which became effective in November 1995, were not "subsequent" amendments. See 18 U.S.C. § 3582(c)(2); U.S.S.G. App. C, Vol. I, Amends. 484, 517. Thus the district court did not have jurisdiction to

consider them.  See United States v. Stossel, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003) (per curiam) (stating that a motion could be addressed under § 3582(c) only if the appellant was arguing that his sentence should be modified "based on a subsequent sentencing guideline amendment").

Finally, the district court was correct to decline to consider Muza's Equal Protection argument because the court was without jurisdiction to consider an extraneous issue.  See Bravo, 203 F.3d at 782 (finding that the district court properly declined to consider the appellant's Eighth Amendment argument, because § 3582(c) does not grant jurisdiction to consider "extraneous resentencing issues").

## III.  CONCLUSION

Based upon the facts and law set out above, we find that the district court did not abuse its discretion in denying Muza's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).

**AFFIRMED.**